IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM H. MAKI, SR., Administrator of the Estate of William H. Maki, Jr., <br>     Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, WILLIAM E. MILLER, UNKNOWN PSYCHIATRIC OFFICER OF THE DAY, AND UNKNOWN MEDICAL, CUSTODIAL AND/OR ADMINISTRATIVE AGENTS AUTHORIZED TO ACT ON BEHALF OF SALEM VAMC, <br>     Defendants. | Civil Action No. 7:07cv00443 <br><br> **MEMORANDUM OPINION** <br><br> By: Samuel G. Wilson <br> United States District Judge |

This is an action by plaintiff, William H. Maki, Sr., administrator of the estate of his son, William H. Maki, Jr. ("Maki"), to recover damages for the death of his son while a patient in the psychiatric ward of the United States Veteran's Affairs Medical Center ("VAMC") in Salem, Virginia. Plaintiff's complaint contains two counts: Count I alleges that William E. Miller, a nursing assistant who held Maki's legs in an effort to restrain him following Maki's altercation with another patient, and other VAMC employees, violated Maki's rights to substantive due process subjecting them to personal liability under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Count II alleges that the United States is liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, for Maki's wrongful death. Plaintiff has moved for a default judgment against Miller because Miller's pleadings were untimely. Miller has moved to dismiss on the grounds that, as a health care employee of the Veterans Administration ("VA"), he has statutory immunity from the

allegations of plaintiff's <u>Bivens</u> suit. He also maintains that he has qualified immunity and that plaintiff's allegations do not raise a viable substantive due process claim actionable under <u>Bivens</u>. The court denies plaintiff's motion for default judgment and grants Miller's motion to dismiss because, as a health care employee of the VA, he is immune from suit on the allegations against him.

## I.

Maki was a 41-year-old veteran living at the Virginia Veteran's Care Center. VAMC had treated Maki previously and was aware of his multiple psychiatric conditions. Maki called the man to whom he had granted power of attorney complaining of anxiety and paranoid thoughts and was taken to the VAMC emergency room. The staff noted that Maki was depressed and delusional, admitted him as an inpatient to a secure psychiatric ward, gave him an injection of olanzapine for agitation and placed him under constant one-on-one supervision.

Later that day VAMC changed Maki's "behavioral observation status level" so that the staff monitored him every fifteen minutes rather than constantly. About an hour after this status change, Maki was in a day room eating dinner with other patients. Maki, who has a disorder that induces an overwhelming sense of thirst, tried to take a milk carton from another patient. Someone called out for Nursing Assistant Miller; Miller entered the room and told Maki to leave the other patient alone. This patient then pushed Maki and both Maki and Miller fell to the floor. Miller laid over Maki's legs and an undetermined number of patients also restrained Maki. One of the patients held Maki in a headlock. Two VA police officers arrived, and as they attempted to handcuff Maki, they noticed he was blue and unresponsive. Revival attempts did not succeed and Maki died. The cause of death was "cardiac arrhythmia due to arteriosclerotic heart disease,
2

acute psychosis, physical exertion and manual cerebrovascular compression." (Compl. ¶ 20.) The injury related to death was "[m]anual pressure applied to neck during episode of acute psychosis." (Compl. ¶ 21.)

Plaintiff, Maki's father and administrator of his estate, filed a complaint in this court on September 14, 2007. Miller was served on September 25, 2007. On February 2, 2008, this court substituted the United States for Miller as to Count II (the FTCA count) of the complaint, after the United States filed a Notice of Substitution and a certification that Miller's conduct was within the scope of his employment. The United States moved for the dismissal of "unknown medical, custodial, and/or administrative agents" from Count I, the Bivens action. The United States did not represent these agents, and the United States was not named in Count I. Consequently, the court denied the motion. Plaintiff now moves for default judgment against Miller; Miller moves to dismiss the claim against him.

## II.

This case is before the court on plaintiff's motion, pursuant to Federal Rule of Civil Procedure 55(e), for default judgment against Miller for failure to file a timely responsive pleading. The court in its discretion denies the motion because Miller has shown good cause for the delay, and the Federal Rules of Civil Procedure strongly favor disposition on the merits over technical defaults.

Plaintiff filed his complaint September 14, 2007. Miller was personally served on September 25, 2007. Under Federal Rule of Civil Procedure 12, a responsive pleading was due from him within 60 days of service; that period expired November 28, 2007. Instead of a response from Miller, the United States responded with a Notice of Substitution and certification

3

that Miller's actions were within the scope of his employment. The substitution process addresses the FTCA claim but not the Bivens action against Miller personally. The United States explains that it did not reply on behalf of Miller because it considered plaintiff's case to be "in substance a Federal Tort Claims Act lawsuit, and not a true Bivens suit." (Def.'s Resp. to Mot. for Default J. 2.) Thus, significant time passed without a pleading on behalf of Miller; Miller has filed a declaration in which he states that he relied on the government to represent him, and made a timely request for such representation. The first responsive pleading on behalf of Miller was the motion to dismiss, filed February 7, 2008, considered in this opinion. Miller, as a government employee sued for acts within the scope of his employment, reasonably relied on the United States to defend him. The United States now represents Miller.

The clear policy of the Federal Rules of Civil Procedure is to encourage disposition of claims on their merits. United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982); Moore's Federal Practice § 55.20[2][c] (3d ed. 1997). Defaults are disfavored, Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 174 (2d Cir. 2001), and default judgment is a matter of discretion and not a right of plaintiff in this case. See Bryant v. Washington Mut. Corp., 2007 WL 4390386, at *3, Civil No. 6:07cv00015 (W.D. Va. Nov. 19, 2007). Miller has a meritorious defense, as explained below, the delay was through no fault of his own, and plaintiff has not been prejudiced. The court therefore will deny plaintiff's motion for default judgment against Miller.

### III.

Miller maintains that he is immune from suit under 38 U.S.C. § 7316(a)(1), which provides immunity to health care employees of the VA for malpractice or negligence within the scope of their duties, and that plaintiff's remedy against the United States under the FTCA is

4

therefore plaintiff's exclusive remedy.[1] Plaintiff argues that Miller's actions in restraining Maki violated Maki's right to substantive due process which is actionable under <u>Bivens</u> and as a constitutional tort is not subject to § 7316's grant of immunity. The court concludes that, however denominated, plaintiff's allegations against Miller fall comfortably within the provisions of § 7316, which make plaintiff's remedies against the United States exclusive. Accordingly, the court dismisses Miller from this action.

The remedy against the United States under the FTCA for the acts of its employees within the scope of their office or employment is ordinarily exclusive of any other civil action for damages against those employees. <u>See</u> 28 U.S.C. § 2679(b)(1). This exclusivity does not extend to actions against employees for violations of the Constitution. 28 U.S.C. § 2679(b)(2)(B). It is "'crystal clear' that Congress intended the FTCA and <u>Bivens</u> to serve as 'parallel' and 'complementary' sources of liability." <u>See</u> <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 68 (2001) (quoting <u>Carlson v. Green</u>, 446 U.S. 14, 19-20 (1980)). However, there are two circumstances in which <u>Bivens</u> actions will not arise. The first is where special factors counsel hesitation in the absence of affirmative action by Congress. <u>Bivens</u>, 403 U.S. at 396; <u>Davis v. Passman</u>, 442 U.S. 228, 245 (1979). Those circumstances are not present here. The second is

---

[1]Section 7316(a)(1)(A) provides:
(a)(1) The remedy –
    (A) against the United States provided by sections 1346(b) and 2672 of title 28, . . . for damages for personal injury, including death, allegedly arising from malpractice or negligence of a health care employee of the Administration in furnishing health care or treatment while in the exercise of that employee's duties in or for the Administration shall be exclusive of any other civil action by reason of the same subject matter against the health care employee (or employee's estate) whose act or omission gave rise to such claim.

5

where Congress has provided an exclusive remedy which it explicitly declares a substitute for recovery directly under the Constitution and viewed as equally effective.[2] Bivens, 403 U.S. at 397; Davis, 442 U.S. at 245-47. Congress has done so under § 7316. Carlson v. Green, 446 U.S. 14 (1980) is instructive.

In Carlson, the Supreme Court considered the interactions of parallel FTCA claims and Bivens claims, and found there that both claims could proceed where prison officials were alleged to have violated the Eighth Amendment. The Court found that neither of the two circumstances which would "defeat[]" a Bivens action applied. 446 U.S. at 18. The Court found in Carlson that 28 U.S.C. § 2680(h), which created a cause of action under the FTCA against the United States for intentional torts committed by federal law enforcement officers, did not defeat a Bivens claim based upon the same facts. The Court supported its holding by showing that when Congress intends to defeat a Bivens claim through legislation, it does so explicitly. The Court then cited as an example of explicit legislation the analogue to § 7316 – 38 U.S.C. § 4116(a), which is identical to § 7316 in all material respects. In the Court's words, "Congress follows the practice of explicitly stating when it means to make FTCA an exclusive remedy. See 38 U.S.C. § 4116(a) . . . (malpractice by certain government personnel)." Thus, the Court unequivocally viewed 38 U.S.C. § 4116(a) as a leading example of the second situation that defeats Bivens claims: explicit exclusivity legislation. For the purposes of Miller's motion, the court sees no material difference between 38 U.S.C. § 4116(a) and § 7316, and plaintiff has articulated none. The court is left, then, with the Supreme Court's citation of this very law as an example of

---

[2]The statute need not recite Bivens or other "magic words." The question is whether Congress has indicated that it intends the statutory remedy to replace rather than complement Bivens. Carlson v. Green, 446 U.S. 14, 19 n.5 (1980).

6

legislation that defeats <u>Bivens</u> claims based on the same facts, at least where those facts support a claim of "malpractice or negligence."

Plaintiff articulates his constitutional claim as follows: "Mr. Maki was deprived of his life, in violation of his due process rights under the United States Constitution, because he was not supervised properly, he was not treated properly, he was placed in an environment that was dangerous for him, and he was ultimately killed." (Mot. to Dismiss Hrg. Tr. 23, Feb. 5, 2008.) Plaintiff also claims defendants failed to properly train VAMC staff, failed to ensure proper policies were in place, and failed to adequately protect Maki. (Compl. ¶ 24.) Most if not all of these failures could not have been Miller's: there is no allegation that this nursing assistant was responsible for Maki's medical treatment decisions, staff training or hospital policy. There is no allegation that Miller decided on the proper supervision level for Maki, and no allegation that Miller was involved in the decision to place Maki in the day room. The facts do support the inference that Miller was responsible for some supervision of Maki and others in the day room, but the facts pled also show that Miller affirmatively attempted to control a volatile situation and that he was at all times acting within the scope of his employment. (Compl. ¶ 27.)

Plaintiff claims Miller violated Maki's substantive due process rights secured by the Fifth Amendment. Substantive due process protects against state action that shocks the conscience and against interference with rights implicit in the concept of ordered liberty. <u>United States v. Salerno</u>, 481 U.S. 739, 746 (1987). The due process clause is not implicated by a negligent act of an official causing unintended loss of life. <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986). The court recognizes that there might be viable substantive due process claims – not raised by the allegations here – that reach beyond "malpractice or negligence" and that a plaintiff might bring

under Bivens despite § 7316. That remains hypothetical, however, because plaintiff's allegations fall squarely within § 7316. The failure to properly supervise (the only failure cited by plaintiff that could have been committed by Miller) falls within the protection of § 7316 because the allegations[3] describe "malpractice or negligence." Therefore the court grants Miller's motion.

## IV.

For the reasons stated, the court denies plaintiff's motion for default judgment against Miller. As to Miller's motion to dismiss, the facts pled by the plaintiff show that Miller was attempting first to defuse the confrontation involving Maki and then to calm Maki down after Miller and Maki were knocked to the floor. There is, in the light most favorable to plaintiff, a claim that Miller did not perform his job to a legally sufficient standard, and the FTCA provides a potential remedy for that claim. Miller himself is immunized from this claim by § 7316, and, under Carlson, no parallel Bivens claim can proceed against him. Consequently, the court grants Miller's motion to dismiss.

---

[3]Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of complaint for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise the right to relief above the speculative level. Cuvillier v. Sullivan, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007)). The obligation to view facts in a light most favorable to the plaintiff does not require the court to accept legal conclusions. Shore Mkts, Inc. v. J.D. Assocs., Ltd., 213 F.3d 175, 180 (4th Cir. 2000). The court accepts all of plaintiff's allegations as true for purposes of deciding this motion to dismiss, but does not automatically accept the legal conclusions like "reckless," "malicious," and "willful," which could be asserted in many malpractice and negligence claims. The court has not relied on Miller's declaration or any other evidence beyond plaintiff's pleadings and explanations in deciding the motion. Even if there are facts which would support a substantive due process claim despite § 7316, plaintiff's allegations do not rise to that level.

8

Case 7:07-cv-00443-SGW-mfu    Document 37    Filed 03/19/08    Page 8 of 9    Pageid#: 313

Miller's motion to dismiss.

ENTER: This 19th day of March, 2008.

_____
United States District Judge